UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON BURRELL,

               Plaintiff,

    v.

JOHN DOE 1, et al.,

              Defendants.

CASE NO. 2:18-cv-01013-JLR-BAT

**REPORT AND RECOMMENDATION**

      Plaintiff, a former inmate of the King County Department of Adult and Juvenile Detention ("DAJD"), seeks 42 U.S.C. § 1983 relief. Before the Court are plaintiff's and defendants' motions for summary judgment, Dkts. 17, 19, and plaintiff's motion for leave to file an amended complaint. Dkt. 31. The Court has reviewed the record and the parties' pleadings and recommends: (1) Denying plaintiff's motion for summary judgment; (2) Granting Defendant's motion for summary judgment and dismissing the case with prejudice. The Court has reviewed and considered the contents of plaintiff's amended complaint in recommending dismissal of this matter, and the motion to amend should therefore be stricken as moot.

**BACKGROUND**

      On July 10, 2018, plaintiff filed a 42 U.S.C. § 1983 civil rights complaint against John Doe 1 Sheriff, King County Jail, and John Doe 2, King County Jail Supervisor, "in their personal capacities." Dkt. 4. The complaint alleges plaintiff was booked into DAJD on July 5, 2018, and was placed in "Floor-9-South" for 16 days. Plaintiff claims during the time he spent on Floor-9-

REPORT AND RECOMMENDATION - 1

South, he was denied stationary to send mail to family and friends. Plaintiff claims he filed grievances over his right to "communicate freely" and defendants' violation of his First Amendment rights to communicate. Plaintiff also claims defendants violated his Fourteenth Amendment right to equal protection because defendants "deprived [him] the opportunity to purchase stationary like other similarly situated inmates in the King County Jail." *Id.*

On December, 14, 2018 plaintiff filed a motion for summary judgment. Dkt. 17. Plaintiff contends it is undisputed he was placed for 16 days in Floor-9-South and deprived of his right to correspond because he was denied the opportunity to buy paper or envelopes to mail letters. *Id.* at 1-2. Plaintiff acknowledges Floor-9-South is a transitional or temporary housing unit, and for security reasons, none of the inmates housed there have access to writing paper and envelopes to mail letters. He argues, however, that under *Turner v. Safley*, 482 U.S. 78 (1978), DAJD's stance that providing inmates with paper and other mailing materials poses a security risk is irrational. *Id* at 3-4. Plaintiff also argues his First Amendment rights were violated even though he was permitted to make phone calls and receive visitors because these are insufficient alternative means of exercising his rights. *Id*. at 4. Plaintiff claims visitation "is not a viable means of communication," and phone calls are expensive and thus writing letters is the only "practical means to communicate with family and friends." *Id*. at 4-5. Plaintiff further argues providing inmates with paper and envelopes is not burdensome for DADJ. *Id.*

On December 19, 2018, defendants filed a motion for summary judgment. Dkt. 19. Defendants contends this action should be dismissed because (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff's claims do "rise to a constitutional claim"; (3) Plaintiff has no constitutional right to commissary, and defendants did not treat plaintiff differently from others similarly situated; (4) the restriction on paper and envelopes on Floor-9-South is

REPORT AND RECOMMENDATION - 2

reasonably related to a legitimate penological objective; and (5) plaintiff has failed to plead sufficient facts to establish a claim against the named defendants and defendants are in any event shielded by qualified immunity. *Id*. at 4-5.

Plaintiff responded to defendants' summary judgment motion. Dkt. 30. Defendants responded to plaintiff's motion for summary judgment, dkt. 33, and replied to plaintiff's response. Dkt. 36.

On January 2, 2019, plaintiff filed a motion to amend his complaint. Dkt. 31. The proposed amended complaint alleges the John Doe defendants, Williams Hayes DADJ Director, Gordon Karlsson, DADJ Commander and King County Jail violated plaintiff's rights. The amended complaint again alleges plaintiff was denied stationary to write letters during his 16 day placement in Floor-9-South in violation of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. *Id.* The proposed amended complaint sues the newly named defendants in their personal capacities. *Id.* Attached to the amended complaint are several grievances plaintiff filed while housed in Floor-9-South. Both grievances state "I want to grieve classification in King County Jail." One grievances also states "I have been housed on the 9th floor without any access to sending mail," and the other "I have not had access to . . . envelopes to write people." *Id.* Defendants oppose permitting amendment of the complaint and argue the Court should deny the motion to amend the complaint "because it is futile and untimely." Dkt. 5.

**STANDARDS OF REVIEW**

**1.      Summary Judgment**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

REPORT AND RECOMMENDATION - 3

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial— *e.g.*, a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra*. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

**2.    Claims under 42 U.S.C § 1983**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

REPORT AND RECOMMENDATION - 4

violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 n.58 (1978). Rather, each defendant must have violated the Constitution through his own, individual actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. These facts, taken as true, must "give rise to an entitlement to relief." *Id*. at 679. When a plaintiff fails to allege or establish one of these elements, his complaint must be dismissed.

## DISCUSSION

**A.     Administrative Exhaustion**

Defendants argue the Court should grant summary judgment because plaintiff failed to properly exhaust his administrative remedies. Plaintiff disagrees, contending he properly exhausted his remedies. The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies. 42 U.S.C. § 1997e(a) (2008); *see Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). Exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a prisoner must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Id*. at 90. Prisoners need comply only with the prison's own grievance procedures to properly exhaust under the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Where a prison's grievance procedures are either silent

REPORT AND RECOMMENDATION - 5

or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2007).

Here, defendants argue plaintiff failed to properly exhaust his administrative remedies because plaintiff filed two grievances. The first sentence of the first grievance states "I want to grieve classification in the King County Jail"; the first sentence of the second grievance states "I want to grieve classification." *See* Dkt. 23-4, Exhibit D and Dkt. 24. Defendants argue this establishes plaintiff failed to "discuss the defendants' violation of his constitutional right to correspond," and therefore failed to properly exhaust his administrative remedies. Dkt. 36 at 3.

However, in the first grievance, plaintiff also alleged "I have been denied by Federal Rights for 13 days now. I have been housed on this 9th floor without any access to sending mail . . . . I want to have access to my rights immediately." Dkt. 23-4, Exhibit D. In the second grievance plaintiff again alleged "I have not had access to . . . envelopes to write to people . . . I have been denied these services . . . I want to be able to have these services immediately." Dkt. 24. Read as a whole, plaintiff's grievances sufficiently alerted defendants to the nature of the wrong for which plaintiff now seeks redress. To be sure, the grievances complained about plaintiff's classification and placement in Floor-9-South, which plaintiff acknowledges is not a basis for relief. *See* Plaintiff's Response ("A prisoner has no right to where within the facility he is classified." Dkt. 30 at 1-2. But the grievances also complain that plaintiff was being denied access to sending mail and asked defendants to provide plaintiff access to his rights immediately. This is sufficient notice of plaintiff's First Amendment Claim that defendants were impermissibly denying him paper and envelopes to correspond. The Court accordingly recommends rejecting defendants' argument that summary judgment should be granted on the grounds plaintiff failed to exhaust his administrative remedies.

REPORT AND RECOMMENDATION - 6

**B.     Equal Protection - Fourteenth Amendment**

Plaintiff alleges defendants violated "the 14th Amendment's Equal Protection Clause" by depriving him the same opportunity to purchase stationary "like similarly situated inmates." Dkts. 4, 16, 31 (original and amended complaints). The Equal Protection Clause requires persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Defendants argue the Court should dismiss the Equal Protection Clause claim because plaintiff was treated no differently than any other inmate who was housed in Floor-9-South. Dkt. 19 at 15. The Court agrees. There is no dispute Floor-9-South is a temporary and transitional housing unit and that all inmates housed in the unit have no access to writing paper and envelopes to send mail. There can be no dispute that consequently, plaintiff was treated exactly the same as any other similarly situated inmate housed in Floor-9-South. Plaintiff's claim he is being treated differently from inmates in other jail housing units only shows other inmates who are **not** similarly situated are treated differently in respect to materials to send letters. There is no factual basis to support plaintiff's Equal Protection Claim and it should accordingly be dismissed with prejudice.

REPORT AND RECOMMENDATION - 7

C. **Reasonableness of DADJ's Limitation on Ability to Send Mail.**

There is no disagreement that plaintiff and all other inmates housed in Floor-9-South are not given access to writing material to send letters. Plaintiff claims this policy violates his First Amendment Rights. Dkt. 17 at 4-5. Defendants disagree arguing the policy is reasonably related to a valid penological interest, and that the First Amendment claim therefore fails as a matter of law. Dkt. 19 at 15.

Plaintiff, as an inmate, enjoys a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a "closer fit between the regulation and the purpose it serves." *Abbott*, 490 U.S. at 412. However, in neither case must the regulation satisfy a "least restrictive means" test. Id. at 411-13.

A reviewing court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden is not on the state to prove the validity of a challenged regulation, but is instead on the inmate to disprove it. *Id*. More recently, the Supreme Court has reaffirmed this principle, explaining that—in addressing a § 1983 claim brought by a pretrial detainee—"courts must defer to the judgment of correction officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified

REPORT AND RECOMMENDATION - 8

1  response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cty. of*
2  *Burlington*, 566 U.S. 318, 322–23 (2012).
3      Here, there is no dispute Floor-9-South is a transitional or temporary housing unit. *See*
4  Dkt. 25. DADJ restricts commissary including writing paper and envelopes for mail to all
5  inmates in the unit for security reasons and difficulty in administering commissary items. *Id.*
6  Floor-9-South is a high-volume transitional housing unit in which inmates are constantly moved
7  into other jail units or to placements outside of the jail, such as a prison or release to the
8  community. According to DADJ, inmates spend about a week in Floor-9-South before moving
9  on to another placement. *Id.* Because DADJ commissary orders are placed through a third party
10 vendor, it can take a week for inmate commissary orders to be filled and delivered. Hence by the
11 time the order is filled, the inmate would have left the unit and it would require substantial jail
12 resources to track the inmate down and deliver the commissary. *Id.*
13     In additional, DADJ does not allow inmates commissary on Floor-9-South for security
14 reasons. *Id.* The unit is an open day room and inmates have no secure storage bins, unlike other
15 stable jail housing units. *Id.* Because there are no secure storage bins in which inmates may store
16 commissary purchases, these items are targets of theft creating security concerns for the inmates
17 and DADJ. *Id.*
18     Plaintiff disagrees. In specific, plaintiff argues that under the factors outlined in *Turner v.*
19 *Safley*, the Court should grant summary judgment in his favor. Dkt. 17 at 3. Plaintiff argues the
20 restriction is not related to a legitimate penological interest. He contends possessing paper and
21 envelopes do not create a safety risk because these items do not take up much space and are
22 "consumable," i.e., depleted each time an inmate writes a letter. *Id.* at 3-4. Plaintiff's argument
23 fails to address the reasons underlying defendants' restrictions on paper and envelopes in Floor-

REPORT AND RECOMMENDATION - 9

9-South. It does not address how an inmate will likely be gone by the time the paper and envelopes ordered through commissary is delivered. The argument thus does not address the jails administrative concerns or the amount of resources it would take to track down an inmate who has departed from Floor-9-South. Plaintiff's argument also does not address defendants' assertion that in order to maintain jail security and safety, they must implement measures that reduce the risk of criminal activity, i.e. restrict commissary items that cannot be secured to prevent theft, and fights over property taken by one inmate from another.

The Court is required to defer to the judgment of correction officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security. Here, defendants have provided a reasonable justification for the restriction and the Court accordingly finds the restriction is reasonably related to legitimate penological interests.

Plaintiff also claims the restriction violates his rights because there are no alternative means of communicating other than by writing letters. In specific, plaintiff argues in-person visits are not viable means of communication because many prisoners do not receive visits. *Id* at 4. He also argues telephone access is not a viable means of communication because of the high cost to make long distance and international phone calls. *Id.* Plaintiff presents nothing establishing the verity of these bald assertions. Defendants, however, have presented the affidavit of DADJ records and information manager who avers that during the 16 days plaintiff was housed in Floor-9-South, "he set up a telephone debit and pre-paid account," and "placed a total of 190 telephone calls to family and friends." Dkt. 26, ¶ 15. Plaintiff also had two professional visits and two visits from his fiancée while he was in the unit. *Id.* at ¶ 16. The uncontested evidence shows that contrary to plaintiff's claims, phone calls and in-person visits are viable

REPORT AND RECOMMENDATION - 10

alternatives to writing letters to exercise the right to communicate, and that plaintiff in fact took advantage of these alternative means of communication.

The evidence thus cuts against plaintiff's contention that under *Turner v. Safley*, DADJ's regulation is not reasonably related to a valid penological interest. As noted above, the regulation is necessary for DADJ to administer the provision of commissary to inmates in a sensible manner, and is also necessary to ensure jail security and inmate safety. Further the impact on DADJ if it were to provide paper, envelopes and other commissary to inmates in Floor-9-South would be extreme. DADJ would have to expend considerable time, effort, man-power and cost in tracking down and delivering commissary ordered by an inmate who has since departed once the commissary arrived. DADJ would have to have far more corrections officers staffing Floor-9-South to ensure that commissary items, none of which can be secured, is not stolen, misplaced or take. Even with increased staffing, inmates would still be victims of theft, and fights will still break out over stolen property. Additionally, the regulation does not strip inmates of the ability to effectively exercise First Amendment rights to communicate with others outside the jail as the evidence establishes plaintiff made 190 phone calls and had four in person visits while housed in Floor-9-South.

The Court accordingly recommends defendants' motion for summary judgment be granted and the First Amendment claim be dismissed because the regulation limiting access to paper and envelopes to inmates housed in Floor-9-South is reasonably related to a legitimate penological interest, and plaintiff's First Amendment claims is thus not actionable.

**D.     Qualified Immunity**

Defendants also argue summary judgment should be granted because they are entitled to qualified immunity. Qualified immunity shields federal and state officials unless a plaintiff

REPORT AND RECOMMENDATION - 11

pleads facts showing (1) the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). For a right to be "clearly established," existing "precedent must have placed the statutory or constitutional question beyond debate," such that "every" reasonable official would have understood that he was violating a clearly established right. *Id*. at 741. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). The burden is on the party contesting qualified immunity to show that a law was clearly established at the time of an alleged violation. *Davis v. Scherer*, 468 U.S. 183, 197–98, (1984).

As discussed above, defendants did not violate plaintiff's constitutional rights. Plaintiff was temporarily denied access to paper and envelopes. While this impinged plaintiff's rights, the First Amendment was not violated because the denial is reasonably related to legitimate penological interests. Even assuming plaintiff's First Amendment rights were violated, the action should be dismissed based upon the doctrine of qualified immunity. Plaintiff bears the burden of establishing his First Amendment rights were 'clearly established' at the time of the challenged conduct. But he presents nothing establishing his rights were clearly established during the time he was in Floor-9-South. Plaintiff presents nothing establishing it was clearly established the First Amendment is violated where a jail temporarily suspends access to paper and envelopes, or that a jail cannot under any circumstance promulgate a regulation applying such a suspension. Instead, plaintiff simply argues defendants have no immunity because he was not able to mail letters. But this argument turns a blind eye to the facts of the case and the reasons defendants

REPORT AND RECOMMENDATION - 12

present regarding the administration and security of the jail. It also turns a blind eye to the case plaintiff cites in his motion for summary judgment, *Turner v. Safley* which permits jails to implement regulations that impinge upon a prisoner's rights if reasonably related to a legitimate penological interest.

Under *Turner*, DADJ is permitted to implement a regulation that impinges upon an inmates rights if it is reasonably related to a legitimate penological interest. Whether defendants are entitled to qualified immunity thus focuses on whether the regulation denying inmates placed in Floor-9-South access to writing paper and envelopes to send letters violated a 'clearly established' right at the time of the challenged conduct. The regulation was implemented for the administration and security of the jail. Plaintiff presents nothing showing it was clearly established defendants could not implement such a regulation, or that if they did it was clearly established the regulation violates an inmate's First Amendment rights. Defendants are accordingly protected by the doctrine of qualified immunity and the matter should accordingly be dismissed on this basis.

## CONCLUSION

The Court recommends Defendants' motion to Motion for Summary Judgment be granted and all of plaintiff's claims against all defendants be dismissed with prejudice. The Court notes but need not resolve defendants' argument that plaintiff's complaint and amended complaint fails to set forth sufficient facts to establish liability on the part of each defendant. This is because, as discussed above, plaintiff's Fourteenth Amendment claim that he was denied equal protection by being treated differently than similarly situated defendants is factually incorrect and without merit.

Additionally plaintiff's First Amendment claim fails. DADJ promulgated a regulation limiting access to paper and envelopes to inmates housed in Floor-9-South. While the regulation impinges upon an inmate's rights, it is not actionable under the First Amendment because it is reasonably related to a legitimate penological interest, i.e. the proper administration of DADJ, the security of the institution and the safety of the inmates and staff. Even if the regulation violated plaintiff's First Amendment rights, defendants are protected by qualified immunity.

The Court's recommendation that defendant's motion for summary judgment be granted necessarily includes the recommendation that plaintiff's motion for summary judgment be denied. The Court also notes plaintiff has filed a motion to amend the complaint. The Court has considered the amended complaint in recommending defendants' motion for summary judgment should be granted and the case should be dismissed with prejudice. As such the motion to amend should be stricken as moot if the Court adopts the recommendation to dismiss the case with prejudice.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **February 7, 2019.** The Clerk should note the matter for **February 8, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due.

REPORT AND RECOMMENDATION - 14

Objections and responses shall not exceed **twelve (12)** pages.  The failure to timely object may affect the right to appeal.

DATED this 24th day of January, 2019.

```
                                    /s/ BT
                                    _____
                                    BRIAN A. TSUCHIDA
                                    Chief United States Magistrate Judge
```